Argued July 18, affirmed September 9, reconsideration denied
October 9, petition for review denied November 1, 1974

## STATE OF OREGON, *Respondent, v.* JERRY EDMUND ARONHALT (No. 14-931), *Appellant.*

526 P2d 463

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Defendant was convicted on charges of kidnapping in the second degree (ORS 163.225), forcible rape in the first degree (ORS 163.375), and sodomy in the first degree (ORS 163.405), and he appeals therefrom. They arose out of one transaction. His plea of not guilty was accompanied by a notice of intent to show he was suffering from a mental disease or defect at the time of the acts charged, pursuant to ORS 161.300 and ORS 161.309.

The evidence of his guilt was overwhelming. His principal defense of mental disease or defect was fully presented. No error is assigned arising out of that aspect of the case.

■ He contends that it was error to overrule his demurrer to the indictment because it did not affirmatively allege that the victim, who was correctly named in the indictment, was not his wife. Defendant at the time here involved was married. His own wife testified

at the trial, called by him as a witness in his own behalf.

The indictment[1] fully informed the defendant concerning the crimes charged and complied with ORS 132.540[2] and ORS 132.550.[3] Defendant points to ORS 163.305 (2) in support of his contention that the indictment is insufficient as a matter of law because it

---

[1] "INDICTMENT

"Jerry Edmund Aronhalt is accused by the Grand Jury of Washington County by this indictment of the crime of kidnapping in the first degree on Count I, rape in the first degree on count II, and sodomy in the first degree on Count III committed as follows.

"Count I—ORS 163.235

"That the said defendant Jerry Edmund Aronhalt on the 8th day of February A.D. 1973, in the said County of Washington, State of Oregon, then and there being, did unlawfully, feloniously and knowingly, without consent and legal authority, take * * * [the victim] from one place to another with intent to interfere substantially with the said * * * [victim's] personal liberty, and with the purpose of causing physical injury to * * * [the victim]; and

"Count II—ORS 163.375

"That the said defendant, Jerry Edmund Aronhalt, as part of the same act and transaction alleged heretofore, on February 8, 1973, in Washington County, Oregon, did unlawfully, feloniously and knowingly engage in sexual intercourse with * * * [the victim], a female, the said * * * [victim] being subjected to forcible compulsion by the said defendant; and

"Count III—ORS 163.405

"That the said defendant, Jerry Edmund Aronhalt, as part of the same act and transaction alleged heretofore, on February 8, 1973, in Washington County, Oregon, did unlawfully, feloniously and knowingly engage in deviate sexual intercourse with * * * [the victim] by causing the sex organs of the said defendant to be brought into contact with the mouth of * * * [the victim], the said * * * [victim] being subjected to forcible compulsion by the said defendant.

"contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"Dated at Hillsboro, in the County aforesaid, this 9th day of February A.D. 1973."

does not affirmatively allege the victim named therein was not his wife. ORS 163.305 (2) defines "female," as used in the portion of the code relating to sexual offenses, as follows:

"As used in chapter 743, Oregon Laws 1971, unless the context requires otherwise:

"* * * * *

"(2) 'Female' means a female person who is not married to the actor. Spouses living apart under

---

② ORS 132.540 provides:

"(1) The indictment is sufficient if it can be understood therefrom that:

"(a) The defendant is named, or if his name cannot be discovered, that he is described by a fictitious name, with the statement that his real name is to the jury unknown.

"(b) The crime was committed within the jurisdiction of the court, except where, as provided by law, the act, though done without the county in which the court is held, is triable therein.

"(c) The crime was committed at some time prior to the finding of the indictment and within the time limited by law for the commencement of an action therefor.

"(2) The indictment shall not contain allegations that the defendant has previously been convicted of the violation of any statute which may subject him to enhanced penalties, except where the conviction constitutes a material element of the crime charged.

"(3) Words used in a statute to define a crime need not be strictly pursued in the indictment, but other words conveying the same meaning may be used."

③ ORS 132.550 provides:

"The indictment shall contain substantially the following:

"(1) The name of the circuit court in which it is filed; and

"(2) The title of the action; and

"(3) A statement that the grand jury accuses the defendant or defendants of the designated offense or offenses; and

"(4) A separate accusation or count addressed to each offense charged, if there be more than one; and

"(5) A statement in each count that the offense charged therein was committed in a designated county; and

"(6) A statement in each count that the offense charged

a decree of separation from bed and board are not married to one another for purposes of this definition.

"* * * * *"

We are not here dealing with a victim who, though the wife of the defendant, was living apart from him under a decree of separation from bed and board. No such claim is made. Defendant relies rather on the following statement found in the Commentary to the Proposed Oregon Criminal Code 115, Art 13, § 111 (1970), relating to rape:

"* * * The proposed draft, because of the definition of 'female,' would require that such an allegation be stated in the indictment."

We disagree. In *State v. Shadley/Spencer/Rowe,* 653-54, 16 Or App 113, 517 P2d 324 (1973), we discussed the purposes of indictments:

"* * * Twenty-five years ago these purposes were stated to be:

" '* * * (1) to inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense * * *'

More recent statutory changes reduce the importance of each of these purposes of an indictment. With reference to informing the accused so that he can prepare his defense, this can now be accom-

---

therein was committed on, or on or about, a designated date, or during a designated period of time; and

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended; and

"(8) The signatures of the foreman and of the district attorney; and

"(9) The date the indictment is filed with the clerk of the court."

plished by way of the new criminal discovery statutes. * * *

"In light of these statutory changes, it would appear that Oregon criminal procedure has been and is now evolving toward the concept that an indictment is merely a formal method of initiating criminal proceedings and identifyng the name of the crime that the accused is alleged to have committed. All other purposes served by indictments under older statutes 25 years ago are now served as well or better by newer statutory schemes. * * *"

The general rule in Oregon is that:

"* * * [A]n indictment in the language of a statute is good on demurrer. * * *" *State v. Nussbaum,* 261 Or 87, 91, 491 P2d 1013 (1971).

The indictment in the present case is in the language of the statute. ORS 163.375 (1) (a) provides:

"(1) A person who has sexual intercourse with a female commits the crime of rape in the first degree if:

"(a) The female is subjected to forcible compulsion by the male * * *."

Moreover, ORS 163.305 (2) adds no new element to the crime of first degree rape. It merely defines the term "female" as used in ORS 163.375 (1) (a). *Cf. State v. Jim/White,* 13 Or App 201, 219, 508 P2d 462, Sup Ct *review denied* (1973). The indictment contains all the elements of first degree rape: (1) "sexual intercourse with a female" and (2) the "female * * * [was] subjected to forcible compulsion * * *."

Defendant's contention in the present case is similar to the contention of the defendants in *Jim/ White,* who were indicted for "theft." The theft statute contains various sections which describe acts of theft and which refer to other statutes for the definitions of

terms. In holding that the indictment properly charged the defendants with "theft," this court said:

> "[T]he statute in question here fully defines the meaning of the word 'theft' and the defendants need look no further to discover what act and crime is being charged. Where the words used in the indictment necessarily imply other words those words need not be used in the indictment. *State v. Reynolds,* 229 Or 167, 366 P2d 524 (1961). *Where the words used in the indictment are sufficiently defined in the statute the definitions need not be included in the indictment.* People v. Kamsler, 67 Ill App 2d 33, 214 NE2d 562 (1966)." (Emphasis supplied.) 13 Or App at 220-21.

It is significant that defendant does not contend he was misled by the absence of an allegation that the woman he raped was not his wife. *Cf. State v. Oregon City Elks,* 17 Or App 124, 520 P2d 900 (1974).

The defendants in *State v. Cannon/Clark/Green/Donnelly,* 17 Or App 379, 521 P2d 1326, Sup Ct *review denied* (1974), claimed that the indictments did not state crimes, and this court said:

> "* * * The indictments do inform the defendants of the charges against them * * *. The state is not required to repeat statutory definitions of terms used in the indictment * * *." 17 Or App at 387.

Accordingly, we conclude that despite the language of the Commentary to the Proposed Oregon Criminal Code 115, Art 13, § 111 (1970), the indictment was sufficient in Count II thereof to charge the defendant with first degree rape. ORS 163.375. There was no error.

The remaining assignments relate to the admission of certain evidence. Testimony at trial showed that defendant smashed in the living room window of the

victim's home, brandishing a pistol and a tire iron. The victim described the pistol as having "a long barrel."

Defendant next tied the victim's hands behind her back "with a rope or some kind of binding." She did not see the "binding" because it was behind her back. Immediately thereafter, the victim was kidnapped by the defendant and, still bound, taken by him in his car, at night, up a mountain road where the crimes of rape and sodomy were committed.

A few months before, during November or December 1972, defendant was visiting one Carl Jones, and Jones showed defendant his long-barreled pistol with its holster. Around Christmas 1972, someone broke through the glass door of Jones' home and stole the pistol and holster.

The day after the crime charged, the police, pursuant to warrant, searched defendant's home and car. The police found a holster, identified by Jones as having been stolen from his home, hanging on a door in defendant's home. The police also found three pieces of rope and a tire iron in the "bathroom area" of defendant's home, and found more pieces of rope on top of a dresser and in his car.

■ Defendant contends it was error to receive testimony concerning the pistol, holster and the three pieces of rope. We disagree. The jury could have reasonably inferred that defendant stole the long-barreled pistol described by the victim and the holster from Jones, and then later used that pistol in threatening the victim. Here, the owner of the pistol and holster described the pistol stolen from him as having "a long barrel" and identified the holster as his. He testified that he

had exhibited them to defendant at his home, and that shortly thereafter they were stolen from his home. The holster was introduced in evidence. The pistol was not found.

In *State v. Moore,* 1 Or App 394, 399, 460 P2d 866 (1969), 463 P2d 373, Sup Ct *review denied* (1970), we considered a case where a pistol and holster used in another crime were admitted and said:

"\* \* \* It is relevant circumstantial evidence to show that a defendant had access to a weapon similar to that used in the commission of a crime. *State v. Hancock,* 245 Or 240, 421 P2d 687 (1966). \* \* \*"

In *State v. Lunceford,* 8 Or App 346, 348-49, 493 P2d 753, Sup Ct *review denied* (1972), we said:

"An exception to the general rule excluding evidence of other crimes committed by the defendant has been made where such evidence is relevant to identify defendant as the perpetrator of the offense at bar.

"The proper rule to be applied here was early stated by our Supreme Court in *State v. Baker,* 23 Or 441, 443, 32 P 161 (1893):

" '\* \* \* In cases where the prosecution relies on circumstantial evidence for a conviction, and the evidence offered forms logically one link in the chain of circumstances, tending to show that he who committed the one crime must have committed the other, or is so intermingled and connected with the crime charged as to form one entire transaction, it is admissible although it may tend to prove distinct felonies. \* \* \*' "

Concerning the ropes, the jury could have reasonably inferred that the ropes found near the tire iron in defendant's home and in his car were used to bind the victim. *State v. Seay,* 8 Or App 509, 512-13, 495 P2d 39 (1972).

There was no error in the receipt of the challenged items of evidence.

■ The remaining assignment concerns the cross-examination by the state of defendant's wife concerning her own testimony as a defense witness. It related to a statement made by her on direct examination by the defendant. The cross-examination was clearly proper under ORS 45.570④ and does not warrant discussion. There was no error.

Affirmed.

---

④ ORS 45.570 provides:

"The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith, and in so doing may put leading questions; but if he examines him as to other matters, the examination is subject to the same rules as a direct examination."